The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Thank you. Please be seated. And we're ready for our next case, U.S. v. Sitton. Ms. Albrow. Yes, Your Honor. May it please the Court, this is Kimberly Albrow here on behalf of the appellant, Dominica Sitton. This appeal involves a very narrow slice of convictions which Mr. Sitton submits do not meet the definition of felony conviction under U.S. Sentencing Guideline 2K2.1. The only prior convictions that would be implicated by your decision in this case are South Carolina Youthful Offender Act convictions which were committed when the defendant was not yet 18 years old. Mr. Sitton submits that under the plain language of 2K2.1 and the relevant cases in South Carolina interpreting the Youthful Offender Act, a YOA conviction is not classified as an adult conviction by South Carolina. And the guideline, 2K2.1, requires that if the conviction is to qualify as a felony conviction, it must be an adult conviction. And that is what is included in that is a conviction where the person was 18 years old when they committed the offense. If the person is not 18 years old, then the guideline requires that the State classify it as an adult conviction. Why is it in South Carolina, I think, if you're 17 or under, the family court has jurisdiction exclusively and there's a process by which a case can be transferred from family court to general sessions court. I think the code, you all probably know it better than me, but the code has those provisions and I think the family courts apply the U.S. versus Kent factors. And if they transfer it and the court in its discretion has decided that it goes to general sessions, why isn't that process an expression that it's an adult conviction? Well, I looked extensively into general sessions and whether it's defined as an adult court solely, and I couldn't find anything that shows that. My understanding, although I'll be up front, I've never practiced in South Carolina State Court, but I've looked as well as I can and consulted with people who have. That process that you described is correct, that the family court can move for the juvenile to be tried in general sessions court. But I don't think being in general sessions court alone meets the definition of the guidelines, which that it is classified as an adult conviction. And the example given in the guidelines is that the person who is under 18 is expressly preceded against. Does South Carolina's two strikes law require adult convictions? I'm not sure. I believe so, but I really couldn't say. Well, it seems that because the South Carolina case state versus standard held that a youthful offender conviction in the court of general sessions, sentence pursuant to the Youthful Offender Act was a predicate conviction for purposes of South Carolina's two strikes law. So if that's the case and the two strikes law requires adult conviction, then South Carolina, at least in this case, seems to say that general sessions convictions are adult convictions. And I really couldn't speak to it. I mean, I'm happy to look into it or provide further briefing, but I really couldn't speak to the two strikes law in South Carolina. Is the converse true to the extent that if someone who's not a legal adult is convicted in the general sessions court, that that cannot be a juvenile conviction? I guess they aren't termed convictions for juveniles. Their juvenile adjudications or adult convictions is my understanding, and the reason the youthful offender act. Well, I mean, is there any South Carolina case that says that the juvenile who's tried in the general sessions court is not guilty of an adult offense? Not that I'm aware of. I don't know that there has been. The cases that I found that were relevant in defining whether youthful offender act was a juvenile adjudication or was an adult conviction seem to suggest it's somewhere in between. It's some kind of hybrid. So Mr. Sitton isn't submitting that he had a juvenile adjudication. What he's submitting is that for some purposes, and again, like Judge Thacker brought up, the two strikes act, I'm not sure how that's treated under State law, but the gay case, the gay versus aerial case, which I cited in the supplemental briefing, does treat these adjudications differently for purposes of expungement than it does. But that's, as I understand that case, it's saying that if you are within the age period covered by the Youthful Offender Act, most of which are for people who are adults, you can take advantage of the Youthful Offender Act expungement provision. In other words, it's not limited to that 17-year-old person who's covered by the act. I don't, I mean, it seems to me all gay is saying is that if you are between 17 and 25, you get the benefit of the expungement provision, not just if you're only 17. And so I don't see how that, I mean, I don't see how that establishes that if you are under 17, you're not being tried as an adult. It looks like when you're transferred, you lose the confidentiality that exists for provisions carried out by the family court. You're obviously subject to all the other aspects of General Sessions' court. And, you know, I guess I'm having a hard time seeing why that's not effectively, if not explicitly, an expression that it's an adult conviction. Well, on the flip side of that, I would say, and I think this is why it is considered hybrid, I mean, there's the Kraft v. State case, which goes all the way back to 1984, where the Court said they're neither juvenile nor adult convictions. So if the Court wanted to engage in a case-by-case analysis of these youthful offender convictions that occurred when a defendant was 17 or younger, there are also aspects of it, especially if the judge, the sentencing judge, chooses to apply other parts of the Youthful Offender Act sentencing portions that make it more like a juvenile adjudication, such that they're offered treatment, they have an indeterminate sentence of up to six years, and that applies even if the person could have, under the adult statute of conviction for the offense, even if they could receive a sentence that was less than six years, that the statutory maximum is less than six years, if they're convicted as a youthful offender because the Court believes they could benefit from treatment because they're a youth, it doesn't matter that the other sentence under the statute of conviction as an adult could be less. So there are aspects. Is it accurate that also, under that sentencing scheme, that can also apply to individuals 18 and over, up to a certain age? That's correct. And that's why the depth... I mean, if a 23-year-old can get that treatment, they're obviously not a juvenile. That's correct. But under the definition provided by 2K2.1, which is where this enhancement originated, if a person is convicted and they're 18 or older, by definition in the guidelines, those convictions count. So I wouldn't be arguing about those here because, like I said, this is a very narrow slice of cases that would only involve a youthful offender act conviction that occurred when the defendant was under 18 years old. So you're saying that even though a sentence for a 23-year-old, to use Judge Agee's example, has all these hallmarks of rehabilitative aspects to them, you would characterize that, it sounds like, as a juvenile sentence, but the defendant doesn't get the benefit of it because he or she is over 18 or over. Correct. If this came up, if Mr. Sitton was 23 years old and had a youthful offender act conviction, even if he was sentenced under one of the youthful offender provisions rather than as an adult, he would — this conviction would count for the enhancement because the definition in the guidelines, in 2K2.1, the definition of felony conviction is defined as if the person was 18 or older when they committed the offense, it's an adult conviction. It's a felony conviction. Well, you use that term in your brief, and it may be right. I'm trying to figure all this out. You refer to a youthful offender act conviction, and that seems like a description that assumes the answer, perhaps, and I'm not suggesting you're being disingenuous. But, I mean, without doubt, it's a — there can be defendants who are youthful offenders. I mean, they're categorized that by their age. But isn't the youthful offender act primarily a sentencing alternative? So you're youthful, you're convicted of a crime, and then based on that age, the youthful offender act provides sentencing alternatives. It seems to me that's how I read it in terms of how it's operated in practice. Well, I think that's a fair interpretation, but that's one of the reasons I cited because that is the case where they refer to the expungement statute, and I believe the title of that is a youthful offender conviction. Got it. And they refer to it as conviction, and it's something that — it was very difficult to, you know, read through these State cases and try to find out how it was characterized. But I believe with that case and with some of the other State cases that I cited, it does seem to say that — and I don't disagree that it seems kind of strange, but there are a lot of things in South Carolina State law that might not make sense in the federal world. But the youthful offender act, that's why it's a hybrid. I'm not up here arguing that it's a strictly juvenile adjudication. What I'm saying is it's somewhere in between and that based on the guideline definition, if the person is 18 years or older, the guideline definition covers that. It would be a predicate offense. It's only these ones that are kind of caught in between where the person is under 18 and is convicted as a youthful offender and then can be sentenced either as an adult or under the youthful offender act. They're a hybrid, so it doesn't meet that example given in the guideline definition of felony conviction and adult conviction that the person must be expressly preceded against as an adult. That's the distinction that I drew from the case law. And this Court in English, albeit an older case and an unpublished case, it cited to the Kraft v. State case in South Carolina and explicitly recognized that YOA convictions are neither juvenile nor adult. And I believe that's the exact language from English. So it was referred to as a conviction there as well. Could I ask you to address one point? Sure. As I understand how the enhancement works, there's kind of a two-pronged inquiry. One is whether there is an adult conviction, and that's kind of what we've been talking about. And then it seems like there's an additional question of whether it's adult conviction for which criminal history points are awarded under Chapter 4. And you seem to suggest, yeah, that is a requirement and focus on part of that. But is it not permissible that the criminal history points can also be awarded under 4A12D? And, well, 2D2, you focus on D1, which is the year and the month, but there's also criminal history points that can be awarded under D2. And so if we do have an adult conviction and we're looking to see whether it's one for which criminal history points can be awarded, I understand that this is less than a year and a month, but why wouldn't D2A or B apply? Doesn't it look like in the PSR they applied D2A by virtue of awarding two points? And I apologize for the original briefing. That was very confusing when I went back and read it, so I'm happy to answer any questions about that. It is true that he got the criminal history points, two criminal history points, under, I believe it is under 4A1.2D2A. So that can be an adult or a juvenile adjudication. And it was because that offense, the YOA offense, occurred within five years of him. So you don't have a quarrel with that. Your issue is on the first point of whether it's adult conviction in the first place. That's correct. Because I'm under plain error review because this wasn't raised below. And while I did cite the Glover case, it's out of the Eleventh Circuit, and they did apply this sentencing because if you look at all the criminal, the career offender guidelines, Chapter 4, and look at how the criminal history points have to count and they refer to it as this, there's been a demarcation of a year and a month sentence being an adult sentence. When it relates to the career offender and the criminal history points, the Glover case out of the Eleventh Circuit that I cited did cite to the criminal history point guideline for purposes of applying the 2K2.1. But I would say that is unclear in this circuit, and it's unclear from my multiple readings of the guidelines to try to figure that out. So I thought, well, I'll just go with the 2K2.1, the explicit language, and the cases related to that. Thank you, Ms. Albro. You've got some time left on rebuttal. Thank you. Ms. Flynn.  May it please the Court. My name is Katherine Hollingsworth Flynn, and I represent Appellee United States of America in this matter. Your Honors, neither South Carolina's Youthful Offender Act nor case law clearly preclude Mr. Sitton's 2012 South Carolina conviction for assault and battery first degree from being an adult conviction. Thus, there was no plain error in the district court's guidelines calculation in Mr. Sitton's case. Further, after considering the pre-sentence report, the guidelines implicated in that report, and the arguments of the parties, the district court clearly indicated it would have imposed the same sentence even had it calculated the guidelines differently. And under the totality of the circumstances in this case, that sentence would have been reasonable. Thus, even assuming the district court plainly erred in calculating the guidelines applicable to Mr. Sitton. But we agree with you that there was an adult conviction. We don't get into any of that. That's correct, Your Honor. If there is an adult conviction, or even if it is unclear whether it is an adult or a juvenile conviction, then it cannot be plain error for the district court to have calculated the guidelines as it did. So is it case determinative here that Mr. Sitton's prior conviction was in the General Sessions court as opposed to juvenile court? Your Honor, I think this court has clearly indicated in English that South Carolina's YOA does not define convictions as either adult or juvenile convictions. But the case law indicates that that is a fact-specific determination. And drawing from this court in English, from the Eleventh Circuit opinion, which is cited in English, and from the Mason case from this court, it appears that the relevant facts specific to that determination are locus of prosecution. So that is that transfer from family court, which would normally have jurisdiction to General Sessions, where Mr. Sitton was, in fact, prosecuted for that assault and battery first degree. It is the type of sentence imposed. The South Carolina YOA allows for a variety of types of sentencing options. This court has said that the South Carolina YOA sets forth a discretionary sentencing alternative. And those sentencing alternatives run from more supervisory-type sentences to actual incarcerated-type sentences. But the English case has three facts. First of all, the English case is an unpublished, nonbinding case. Do you think we should follow that, or should we? Because that case talks about two factors, two of which look at the sentence. And it looks like the inquiry under the guidelines is the conviction, not the sentence. So I wonder if that makes sense. And what do you think? Do you think we should do, as Judge Agee said, in place almost dispositive, if not heavy weight, on the court in which the conviction takes place? Or do you think we ought to look at what the Eleventh Circuit said should be looked at or what an unpublished case should be looked at, says we should look at? Your Honor, I think that the guideline, 2K2.1, directs us to look at the type of conviction. And Application Note 1 to that guideline says that the conviction only counts as a predicate conviction if it is an adult conviction, which means if it is classified as such under the laws of the jurisdiction, we're convicted. So what's your best South Carolina case in support of your position? So it seems like we need to look to South Carolina law. And, Your Honor, I'll be clear. The statute is not clear as to whether convictions under the South Carolina YOA are adult or juvenile convictions. But I think this court, in taking this issue up in English, indicated that that is a fact-specific determination. It's cited to the Eleventh Circuit in opinion. So you don't really have any South Carolina? Your Honor, I think, my apologies, I think that appellant's cases are concerned with sentences. And I think the type of sentence is one of the facts that plays into the determination of whether a YOA conviction is an adult conviction. But the guideline directs us to look at convictions, not sentences. And this court in Mason explicitly distinguished between a conviction and a sentence. A conviction is not a sentence. A sentence is not a conviction. So under, and I'm asking because I don't know, as far as Judge Thacker's question, is a conviction, as opposed to the sentence, as opposed to a juvenile disposition, is that a factor under South Carolina law for sentencing enhancements or some other factor? I mean, is there a reason why South Carolina courts would have a need to define what an adult conviction is? I don't know the answer to that in terms of would South Carolina courts have a need to define whether a YOA sentence is an adult or juvenile conviction. Maybe to determine whether it qualifies under the two-strikes law in South Carolina. And I'll be forthright. I am not familiar with the two-strikes law in South Carolina and how this would play into that. But I do think that the guideline that is at issue before this court, the 2K2.1, directs us to look at convictions. And I think the case law is applied through English, through Mason, and through the Eleventh Circuit opinion, indicates that there is a fact-specific determination as to whether a YOA conviction is an adult conviction. Those facts are locus of prosecution, as we've talked about. The family court in South Carolina typically has jurisdiction of juvenile criminal offenders. For those offenders to end up in General Sessions Court requires a transfer of jurisdiction. The other factors that are relevant under the case law are type of sentence and actual time served. Here, Mr. Sitton was 16 when he committed the underlying assault and battery, but he was prosecuted in General Sessions Court, which, of course, requires that transfer. He was sentenced to an actual incarcerative-type sentence of 385 days. And I would turn the Court to Joint Appendix 156, which is the sentencing sheet from that conviction. It does state that Mr. Sitton was 17 on the day he was sentenced in state – in General Sessions State Court. But, in fact, it also lists the state of birth. He had passed his 18th birthday at that point. So he was sentenced after the age of 18 in the adult – typically adult court in South Carolina. He was sentenced to an actual custodial sentence of one year and 25 days – one year and 20 days. And, Your Honors, Mr. Sitton's cases from South Carolina focus on sentences. This – this part of the guidelines directs us to look at convictions. They are not the same thing. Furthermore, we've talked about Application Note 1 to Section 2K2.1, which tells us that we have to look at whether the state classifies this as an adult conviction. Application Note 10 to the – to the same guideline indicates that only felony convictions that receive criminal history points under 4A1.1a, b, or c count as predicate convictions. Moving from there to 4A1.1, Application Note 1 directs us then to 4A1.2d. And there is a distinction in 4A1.1d – 4A1.2d, excuse me, Your Honors, between three-point criminal history offenses, which are explicitly adult convictions with a sentence of more than one year and one month, and two- and one-point offenses, which are adult or juvenile sentences. And now we're back to the sentence conviction distinction that occur within the relevant look-back period. So, Your Honor, I would say as to this piece that there is simply no binding precedent that establishes that Mr. Sitton's assault and battery conviction was not an adult conviction. So any error here by the district court in enhancing Mr. Sitton's guidelines pursuant to his previous assault and battery conviction was not plain. Your Honor, moving on, even assuming there was a plain error in the calculation of these guidelines, that error was harmless because both prongs of the assumed error harmlessness test under Savillon-Matute as incorporated at the third element of plain error were met in this case. Does that argument depend on the district court's language that it would have imposed the same in sentence anyway? I think that is part of what comes in to this analysis. Does it concern you at all that Mr. Sitton argues that that appears to be just kind of boilerplate language without any explanation and that it's issued pretty regularly by the particular district court and others? Are we supposed to just accept that without any further explanation, or is more explanation needed for us to give that fair consideration? Your Honor, I think that the argument that this is boilerplate language fails for at least two reasons. First, we simply have no way of knowing what the district court says in every or almost every sentencing because we have a selection effect problem. We only get transcripts of the cases that end up on appeal. And even still, opposing counsel was able to list a fair number of cases in which this boilerplate language was used. Certainly, but we cannot, Your Honor, take from that what the court would say in every sentencing. That's sort of the problem because the court didn't have an opportunity to specifically address or didn't take the opportunity to specifically address the issue here. And, Your Honor, I think the court did specifically address the issues here. First of all, comparing the court. Let me back up one step. The court specifically said it would have imposed the same sentence, although that's not a required statement to meet the first prong of Seville-Mentute. It's also not a meaningless statement. Under Molina-Martinez, where the record is silent as to what the court might have done had it calculated the guidelines differently, an incorrect guidelines range is usually prejudicial. But the government can point to all parts of the record to counter a showing of prejudice. And so we do not read that single sentence of, if I've calculated the guidelines incorrectly, I would have imposed the same sentence in isolation from the rest of the record. But right around that time, the district court is talking about how the defendant has gotten the message and things that are favorable. You would think an alternative variant upward in the event of a lower guideline range would be accompanied by more critical language, if you will, rather than complementary language. Well, I think this district court specifically points to several factors in saying this is the appropriate sentence, and here I would turn to JA 125 and 126, the court's two statements in imposing the sentence. It specifically points to the defendant's criminal history. It specifically points to the dangerousness of the conduct. It specifically points to mitigation and rehabilitation. I think he's taken this all to heart. I think he will avail himself of the opportunities at the BOP. Those are, in fact, the very factors that the parties argued before the court. So when it imposed this sentence, the court had the pre-sentence report and the guidelines that it implicates before it. And this was essentially a relatively simple guidelines calculation. It's two factors. Was there a high-capacity firearm, and did Mr. Sitton have a prior predicate conviction? So it knew what guidelines were at play. It had the arguments of the parties. From the government, Mr. Sitton's continued criminal conduct before, during, and after pleading guilty in his federal case. From defense counsel, Mr. Sitton and his mother, arguments about mitigation, what might have driven him to commit these acts, and about rehabilitation, his desire to change his life, do something different in the future. So the ---- And I don't mean to interrupt, but, yeah, I'm not suggesting there wouldn't be evidence in the record from which a district court could, in this record, you know, issue language that would be sufficient. The trouble is, at the point where that language is issued, it's not tied back to the things you're articulating. And, you know, maybe, you know, there's some law that would allow us to look at the record as a whole and do that. I get that. But, you know, the concern, quite frankly, is it's just language without any connection to other parts of the record. So we're trying to figure out if that's what the district court meant or not. And that's not your issue, I realize that. But that's the concern of language without connection to the record. Well, and I think the language here, Your Honor, does clearly tie to the record. Again, it ties to the PSR to the guidelines issues at play in this case. It ties to the arguments of the party. And having listened to those arguments, having considered the PSR, having considered the guidelines at play, this court made an individualized, specific determination tied to those as to why this was the appropriate sentence in this case. Furthermore, when we compare the court statements at sentencing, and here I'm going to JA 125-126, with probation's form of recommended sentence at Volume 3 of the Joint Appendix at 2, they are, in fact, not the same. The court, again, ties to criminal history, dangerousness of conduct, rehabilitation and mitigation, which were those very factors. For a within-guideline sentence, right? It does that in the first statement for a within-guideline sentence. This was a within-guideline sentence, correct? Excuse me, Your Honor. Was this a within-guideline sentence? This was a within-guideline sentence under the higher guidance. If the licensing counsel is correct, this would be converted then to an upward variance above the guidelines, and you're saying the court would not need to say anything more about an upward variance than the boilerplate language that was used? Your Honor, again, I do not think that this boilerplate language. Okay, assume I do. Okay? Then what? Then there's nothing that's still good enough? I think under Molina-Martinez, the government can point to the totality of the record, and I think the totality of the record shows that the district court explicitly considered the factors that are relevant under 3553A under the guidelines as to why this was an appropriate sentence. Your Honor, secondly, as to the second prong of Savillon-Matute, if this were in fact a seven-month variance from the top of the otherwise applicable guidelines range, that would have been a reasonable sentence under the totality of the circumstances in this case. Mr. Sitton was on probation at the time he possessed the firearm in this case. He possessed a high-capacity firearm, allegedly in connection with drug trafficking. Law enforcement was called to the scene because there was a report that somebody was trafficking drugs. Mr. Sitton matched the description of that individual. Mr. Sitton pled guilty to being a felon in possession in federal court. He bonded out. Within two weeks, two and a half weeks, he used controlled substances. He cut his angle monitor, and he fled. He was at large for more than a year. When he was ultimately apprehended and brought back before the federal court, it was not on bond warrant violations. He was allegedly committing new criminal conduct in the form of failure to stop for a blue light and hindering an officer. Under those facts, that totality of the circumstances, a seven-month variance upward from what would have been the otherwise applicable 51- to 63-month guidelines to reflect the pattern of continued criminality, flouting of both the state and federal court's rules, and flight from prosecution would have been reasonable. Your Honors, because there was no plain error in enhancing Mr. Sitton's sentence based on his prior conviction for South Carolina assault and battery first, or because any such error was harmless, this Court should affirm the district court. Thank you very much. Ms. Albrow, you've got some rebuttal time. Thank you, Your Honor. I would first go back and address the issue related to whether or not this Youthful Offender Act results in a conviction or not. I fully concede that a lot of these cases have to do with the sentencing, but that doesn't make it. The fact that you can be sentenced as an adult or a youthful offender under the Act doesn't negate the fact that the case law refers to it, the statute itself refers to it as a youthful offender conviction. And contrary to what the government says, that if it's unclear what the offense is, whether it's adult or juvenile, then it doesn't meet plain error, that's the wrong standard because the guideline requires it to be expressly preceded against as an adult. And the case law makes it a hybrid-type conviction. So it is not, under South Carolina law, the Youthful Offender Act is not something that where the defendant is expressly preceded against as an adult. And the Youthful Offender Act is in Title 24, Chapter 29 of the Code. And at 2419.50 of the South Carolina Code, that's where the alternatives for sentencing are given. It says, if the con --"in the event of a conviction of a youthful offender." cited following a first offense conviction as a youthful offender. He's not adjudicated as a juvenile, but he's also not convicted as an adult. And that is why we submit that the definitions provided in the guidelines, when you compare them to how the State law treats the Youthful Offender Act, it is not the conviction is called a youthful offender conviction. But the Youthful Offender Act, whether it's a conviction or a sentence or a hybrid or whatever, whatever it is, wasn't determinative under English, and it wasn't determinative in the Eleventh Circuit. Both of those were Youthful Offender Act convictions. So, again, I made the point those aren't necessarily binding, and that's true on what I'm saying now. But to the extent they're persuasive, they make the point that whether it's a Youthful Offender Act doesn't get in a showstopper for adult conviction either. And the fact the court you're in is a factor, and that would be General Sessions. Is any sentence imposed? And here there is a sentence. It's less than a year and a month, if you point out, but at least it's more than there was in English. So, I mean, do you agree that the Youthful Offender Act is just a factor and not determinative? Or is it your position that it's determinative? It's our position that because of the statute itself and the cases interpreting it, that it is not expressly an adult conviction, so that it is determinative. But if you — I mean, and there are two ways that you can go. You can take that bright-line rule that these 16, 17, and younger people who are convicted under the Youthful Offender Act don't expressly have an adult conviction. If you adopt the government's position that it's case-by-case, I think then you go back to — So which is your position, though? Are you saying if you're under 18 in South Carolina that there's no adult convictions? That if you're convicted under the Youthful Offender Act, that that is not an adult conviction. That's the position. Well, that says Youthful Offender. I thought we established, though, that that's a sentencing mechanism. But that's why I pointed to the language in the actual Youthful Offender statute where they refer to it as a conviction, and the gay case where it's referred to as a conviction, and the expungement statute cited in the gay case also refers to it as a youthful offender conviction, where it's this kind of hybrid. Well, that's why I'm trying to make sure I understand your argument. I mean, is it your position that if you're 17 years old, convicted in the general sessions court, that that cannot be an adult conviction? That is — if you draw a bright-line rule, that would be my position. I'm asking what's your position. Well, that is — that was our position, and that is what I argued. But if you take the government's position where they're arguing it would be case-by-case, then you get into factors like what kind of sentence was given. Is it an indeterminate sentence? Is it one for rehabilitation in typical juvenile-type rehabilitation matters? And then you might want to look at that the same language for felony conviction is used in career offender, and then you get back to the year and a month sentence, which Mr. Sitton didn't receive. And I see I'm almost out of time, but I didn't address harmless error at all. So I would just say that if the first prong isn't satisfied because you find this is a boilerplate statement that can't be relied on because no reasons were given, then you don't get to the second prong about totality of the circumstances under Sabin-Elmatout. And I would just point out — do you mind if I do one case citation? There was a case that came out today. I believe Judge Thacker was on the panel. Actually, U.S. v. Reeves, No. 21-4397. It was a supervised release case. I believe it was in the same court as here. And on page 4 of the slip opinion, it says that meaningful appellate review could not be done based on this alternate variant sentence statement because reasons were not given. So thank you for your time. Okay. Our normal court practice is to come down and greet counsel in person. That's a victim of COVID. So we'll simply thank counsel for their arguments today. And I'll ask the clerk if they would adjourn court for the day. This honorable court will be in session until tomorrow morning. God save the United States and this honorable court.
judges: G. Steven Agee, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.